UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
)
**MELISSA J. POIRIER,**                          )
)                    **CIVIL ACTION**
          **Plaintiff,**                     )
)                    **NO.   4:14-CV-40106-TSH**
          **v.**                              )
)
**MASSACHUSETTS DEPARTMENT OF**    )
**CORRECTIONS,**                                )
)
          **Defendant.**                    )
_____ )


## MEMORANDUM AND ORDER ON DEFENDANT'S MOTION TO DISMISS
### (Docket No. 14)

### February 4, 2016

**HILLMAN, D.J.**

     Melissa J. Poirier (Plaintiff), pro se, brought this lawsuit against her former employer, the

Massachusetts Department of Corrections (DOC or Defendant), alleging gender discrimination.

The DOC moves to dismiss, on the grounds that Plaintiff's claims are untimely and barred by the

doctrine of claim preclusion.  For the reasons set forth below, the DOC's motion (Docket No. 14)

is ***denied***.

### Background

     The following facts are taken from Plaintiff's pro se complaint.  Plaintiff was employed by

the DOC as a Correction Officer for approximately fifteen years.  She was terminated in 2005 for

violating two of the DOC's Rules and Regulations Governing All Employees.  Specifically, Rule

8(c), which prohibits consorting with inmates and former inmates without approval from the

Superintendent; and Rule 19(c), which requires compliance with "questions or interrogatories"

relating to the conduct of inmates or staff. (Docket No. 18-1 at 54.)  Plaintiff claims that male employees have violated these same rules with impunity, and that she was terminated because she is female.

In April of 2004, Plaintiff faxed a letter to her Superintendent, notifying that she would be in personal contact with a former inmate.  In July of 2004, Plaintiff wrote a letter to the Superintendent, requesting permission for the former inmate to move in with her.  Plaintiff did not receive a response.  In late August of 2004, the Interim Acting Superintendent "detached" Plaintiff with pay pending investigation.  Plaintiff appeared at the DOC headquarters for an investigative interview in September of 2004, and she told the interviewers that she was in contact with a former inmate.  Plaintiff was not advised of the allegations against her and was not advised that she had violated any rules.

In late September of 2004, the Commissioner of the DOC denied Plaintiff's request to cohabit with the former inmate but did not direct Plaintiff to cease all contact.  In January of 2005, Plaintiff participated in a second investigative interview, after which her status was changed to detachment without pay.  In late January of 2005, the DOC notified Plaintiff in writing of the allegations against her; specifically, violations of Rules 8(c) and 19(c).[1]  In April of 2005, Plaintiff attended a Commissioner's Hearing relating to these charges.[2]  On August 11, 2005, Plaintiff was terminated for "conduct unbecoming a correction officer," namely, "knowingly associate[ing] with a former inmate, while off-duty," and "fail[ing] to cooperate in the [DOC's] investigation concerning these allegations"—violations of Rules 8(c) and 19(c). (Docket No. 18-1 at 76.)

---

[1] A violation of Rule 6(d) was later added, for allegedly failing to comply with the Commissioner's directive to cease contact with the former inmate.
[2] During this hearing, the charge for violating Rule 6(d) was dismissed.

According to Plaintiff, the DOC continues to employ male officers who have violated these same rules.

Plaintiff contends that the DOC did not comply with its own Investigations Policy by failing to explain the allegations against her, failing to obtain a written statement from her, not allowing her to record the investigatory interviews, and not allowing her to have an attorney present during the interviews. She also asserts that the investigation was conducted unfairly because the DOC neither inquired about the nature of her relationship with the former inmate nor advised her to cease contact with this inmate. She also contends that the DOC intentionally removed the April 2004 letter (notifying the Superintendent of her contact with the former inmate) from her file.

In January of 2010, four and a half years after her termination, Plaintiff was told by another correction officer, Officer McLaughlin, that he had been personally involved with a former inmate, had notified and met with the Superintendent, and that no adverse action had been taken against him. In fact, the DOC had advised him in writing that he could continue his contact with this former inmate. Less than one month after receiving this information, Plaintiff filed a gender discrimination complaint with the Massachusetts Commission Against Discrimination (MCAD). In November of 2013, the MCAD notified Plaintiff of a "Lack of Probable Cause," on the ground that Plaintiff was not similarly situated with the comparators she had used to support her claims of gender discrimination. The Equal Employment Opportunity Commission (EEOC) also reviewed her complaint and adopted the MCAD's findings. Plaintiff disagrees with these findings and lists in her complaint five male officers, in addition to Officer McLaughlin, who had personal contact with former inmates and were not terminated.

3

Plaintiff filed the instant complaint on August 1, 2014, alleging gender discrimination and seeking reinstatement, retroactive pay, and the opportunity to retire immediately.[3]  The DOC has moved to dismiss the action.

## **Standard of Review**

The DOC has asserted two grounds for its motion to dismiss: claim preclusion and untimeliness.  Although the DOC has not cited to any Rule of Civil Procedure, the above-stated affirmative defenses may be appropriately considered under Rule 12(b)(6). *See Santana–Castro v. Toledo–Davila,* 579 F.3d 109, 113-14 (1st Cir. 2009); *In re Colonial Mortgage Bankers Corp.*, 324 F.3d 12, 16 (1st Cir. 2003).

To survive a Rule 12(b)(6) motion to dismiss, a complaint must allege "a plausible entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007).  Although detailed factual allegations are not necessary to survive a motion to dismiss, the standard "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555.  In evaluating a motion to dismiss, the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Langadinos v. American Airlines, Inc.*, 199 F.3d 68, 68 (1st Cir. 2000).  In addition to the complaint, the court may consider "documents the authenticity of which are not disputed by the parties; . . . documents central to plaintiffs' claim; [and] documents sufficiently referred to in the complaint." *Curran v. Cousins*, 509 F.3d 36, 44 (1st Cir. 2007) (quoting *Watterson v. Page,* 987 F.2d 1, 3 (1st Cir. 1993)).

When a plaintiff is proceeding pro se, the plaintiff's complaint and other filings are "liberally construed." *Erikson v. Pardus,* 551 U.S. 89, 94 (2007) (per curiam) (citation omitted)

---

[3] Plaintiff brought her complaint against the DOC and the MCAD.  In the course of granting Plaintiff's motion to proceed in forma pauperis, this Court dismissed the MCAD.

("a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers"). However, "pro se status does not insulate a party from complying with procedural and substantive law." *Ahmed v. Rosenblatt,* 118 F.3d 886, 890 (1st Cir. 1997).

In order for an affirmative defense to be adjudicated on a motion to dismiss for failure to state a claim, two conditions must be satisfied. *See In re Colonial Mortgage Bankers Corp.*, 324 F.3d at 16. First, "the facts that establish the defense must be definitively ascertainable from the allegations of the complaint, the documents (if any) incorporated therein, matters of public record, and other matters of which the court may take judicial notice." *Id.* Second, "the facts so gleaned must conclusively establish the affirmative defense." *Id.*; *see Santana–Castro,* 579 F.3d at 113-14.

### Discussion

A. *Claim Preclusion*

The instant lawsuit is not Plaintiff's first legal entanglement with the DOC. In 2006, the year after she was terminated, Plaintiff[4] sued the DOC and the Commissioner of the DOC in her individual and official capacities, alleging that the DOC and the Commissioner had violated Plaintiff's First and Fourteenth Amendment rights of association and due process by terminating her for having a personal relationship with a former inmate. *See Poirier v. Massachusetts Dep't of Correction*, 532 F. Supp. 2d 275, 276, 278 (D. Mass. 2008) (hereinafter *Poirier I*). In 2008, the District Court found that Plaintiff did not have a fundamental right to associate with the former inmate, and that the DOC's rules prohibiting personal contact with inmates were sufficient to pass rational basis review. *Id.* at 280-81.[5] Accordingly, the case was dismissed. Plaintiff appealed, and

---

[4] Plaintiff was represented by counsel.

[5] The court also dismissed the DOC as a defendant on Eleventh Amendment grounds and found that, even if the constitutional analysis were incorrect, the Commissioner would be entitled to

the First Circuit affirmed the dismissal in 2009. *See Poirier v. Massachusetts Dep't of Correction*, 558 F.3d 92, 94 (1st Cir. 2009) (hereinafter *Poirier II*).

Under the doctrine of federal claim preclusion, parties are barred from relitigating claims that could have been brought in an earlier suit.[6] *Airframe Sys., Inc. v. Raytheon Co.*, 601 F.3d 9, 14 (1st Cir. 2010). Claim preclusion serves to protect "litigants against gamesmanship and the added litigation costs of claim-splitting," and also prevents the squandering of judicial resources in unnecessary litigation. *Id.* Claim preclusion applies if three requirements are satisfied: "(1) the earlier suit resulted in a final judgment on the merits, (2) the causes of action asserted in the earlier and later suits are sufficiently identical or related, and (3) the parties in the two suits are sufficiently identical or closely related." *Id.*

I need address only the second prong of the claim preclusion analysis, as it is decisive in this case. The First Circuit "uses a transactional approach to determine whether the asserted causes of action are sufficiently identical or related for claim preclusion purposes." *Id.* at 15. "A 'cause of action' in this context includes 'all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.'" *Id.* (quoting *United States v. Cunan,* 156 F.3d 110, 114 (1st Cir. 1998)) (citation omitted). The crux of this inquiry is "whether the causes of action arise out of a common nucleus of operative facts." *Id.* (quoting *Mass. Sch. of Law at Andover, Inc. v. Am. Bar. Ass'n,* 142 F.3d 26, 38 (1st Cir. 1998)). The relevant factors for making this determination include "'whether the facts are related in time, space, origin or motivation,' 'whether they form a convenient trial unit,'

---

qualified immunity for any claim for damages against her in her personal capacity. *See Poirier I,* 532 F. Supp. 2d at 277, 282-83.

[6] Because the DOC relies on the preclusive effect of a federal judgment, this Court will apply the federal law of claim preclusion. *Silva v. City of New Bedford*, 660 F.3d 76, 78 (1st Cir. 2011).

and whether treating them as a unit 'conforms to the parties' expectations.'" *Id.* (quoting *In re Iannochino,* 242 F.3d 36, 46 (1st Cir. 2001)) (citation omitted).

Although not explicitly adopted in this Circuit, other federal courts have espoused the general rule that claim preclusion does not apply if the new suit is based on newly discovered evidence that could not with due diligence have been previously discovered. *See, e.g., Haefner v. N. Cornwall Twp.*, 40 F. App'x 656, 658 (3d Cir. 2002); *Saud v. Bank of New York*, 929 F.2d 916, 920 (2d Cir. 1991).

Here, the two lawsuits arose from overlapping events.  The first lawsuit arose from Plaintiff's relationship with a former inmate, the DOC's year-long investigatory process, and the termination of Plaintiff's employment.  She challenges her termination in both suits, but under different legal theories.  However, the second suit relies on additional facts; namely, the DOC's allegedly disparate treatment of male correction officers who also had personal relationships with former inmates.  Of the six male officers identified in Plaintiff's complaint, she asserts that four were disciplined—but not terminated—for similar conduct between the years 2005 and 2009.[7] Plaintiff filed her first lawsuit in 2006; thus, some of the DOC's actions regarding her male comparators occurred before she initiated the first suit, while others occurred after.

According to Plaintiff's filings, however, she did not have a reason to seek information about the treatment of any male colleagues until 2010, when Officer McLaughlin told her of his own situation.  The record currently before me shows that, until 2010, Plaintiff was under the impression that she had been terminated pursuant to the DOC's policies, albeit with an allegedly shoddy investigative procedure.  She had no reason to suspect that she had suffered any form of discrimination.  Thus, until her encounter with Officer McLaughlin in 2010, no amount of due

---

[7] Plaintiff mentions two additional officers but does not provide dates.

diligence could have caused Plaintiff to gather information about male correction officers who had had personal relationships with former inmates. In order to have known to seek this information, Plaintiff would have to have been clairvoyant.

Moreover, some of the allegedly disparate dispositions of male officers did not even occur until after the first lawsuit had begun. *See Clark v. Kitt*, 619 F. App'x 34, 36 (2d Cir. 2015) ("claim preclusion does not bar claims that could not have been raised in the earlier litigation—for instance, if the events at issue occurred after the prior action."). This situation does not bear the signs of "gamesmanship" or "claim-splitting" that the doctrine of claim preclusion was designed to prevent, see *Airframe*, 601 F.3d at 14, nor could the two suits lead to inconsistent results. *See Montana v. United States,* 440 U.S. 147, 153-154 (1979). Thus, I find that Plaintiff's current claims rely on newly discovered factual evidence, which she could not have acquired with due diligence during the pendency of the first litigation. Accordingly, these claims are not precluded by her earlier suit.[8]

B. *Untimeliness*

The DOC also challenges the timeliness of Plaintiff's present lawsuit. Exhaustion of administrative remedies is a prerequisite to suing in federal court under Title VII. *Franceschi v. U.S. Dep't of Veterans Affairs*, 514 F.3d 81, 85 (1st Cir. 2008). In this case, because the alleged unlawful employment practice occurred in Massachusetts, which has a state law prohibiting gender discrimination and an appropriate administrative body for pursuing such claims, Plaintiff was required to first file her claim with the MCAD. *See* 42 U.S.C. § 2000e-5(c). Then, she was required to file with the EEOC; no sooner than sixty days after filing with the MCAD, but no later than 300 days after the alleged unlawful employment practice occurred, or within thirty days after receiving

---

[8] My findings in this regard are based on the complaint and attached exhibits, construing all reasonable inferences in Plaintiff's favor. As discovery progresses and more facts are introduced into the record, the issue of claim preclusion may appropriately resurface.

notice that the MCAD was terminating its proceedings, whichever was earlier. § 2000e-5(c), (e)(1).  She could then bring suit in this Court within ninety days of receiving notice and authorization from the EEOC. § 2000e-5(f)(1).

The most recent date of adverse employment action in this case was Plaintiff's termination on August 11, 2005; she did not file with the MCAD until January 20, 2010.  However, the MCAD reviewed her claim on the merits and did not reject it as untimely, presumably on the basis of her then-recent discovery of male colleagues allegedly being treated disparately.  After disposition by the MCAD, Plaintiff's complaint was transferred to the EEOC.  The EEOC reviewed the merits of Plaintiff's claim, adopted the findings of the MCAD, and issued a letter, dated May 8, 2014, giving Plaintiff the right to sue.  Plaintiff filed her complaint in this Court on August 1, 2014, which was within ninety days of the date of the EEOC's letter.  Thus, Plaintiff appears to have properly exhausted her administrative remedies, and her suit is timely.

## Conclusion

For the reasons set forth above, Defendant's motion to dismiss (Docket No. 14) is ***denied***.


**SO ORDERED.**


/s/ *Timothy S. Hillman*
**TIMOTHY S. HILLMAN**
**DISTRICT JUDGE**